Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BARKASI, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AUTODESK, INC., ANDREW ANAGNOST, and DEBORAH L. CLIFFORD, <br><br> Defendants. | No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>CLASS ACTION</u> <br><br> JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff Michael Barkasi ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Autodesk, Inc. ("Autodesk" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Autodesk securities between June 1, 2023 and April 16, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Autodesk securities during the Class Period and was economically damaged thereby.

7. Defendant Autodesk describes itself as a "global leader in 3D design, engineering and entertainment technology solutions, spanning architecture, engineering, construction, product design, manufacturing, media, and entertainment. Our customers design, fabricate, manufacture, and build anything by visualizing, simulating, and analyzing real-world performance early in the design process. [. . .] Our professional software products are sold globally through a combination of indirect and direct channels."

8. Autodesk is incorporated in Delaware and its principal executive offices are located at One Market Street, Ste. 400, San Francisco, California 94105. The Company's common stock trades on the NASDAQ exchange under the ticker symbol "ADSK."

9. Defendant Andrew Anagnost ("Anagnost") served as the Company's Chief Executive Officer ("CEO") and President throughout the Class Period. Defendant Anagnost also serves on the Board of Directors (the "Board").

10. Defendant Deborah L. Clifford ("Clifford") served as the Company's Chief Financial Officer ("CFO") and Executive Vice President throughout the Class Period.

11. Defendant Anagnost and Clifford are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

13. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Autodesk under *respondeat superior* and agency principles.

15. Defendant Autodesk and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

16. On June 1, 2023, Autodesk filed with the SEC its quarterly report on Form 10-Q for the period ended April 30, 2023 (the "1Q24 Report"). Attached to the 1Q24 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Anagnost and Clifford attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

17. The 1Q24 Report stated the following regarding internal controls:

We maintain "disclosure controls and procedures," as defined in Rule 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Our disclosure controls and procedures are designed to ensure that information required to be disclosed in our Exchange Act reports is (i) recorded, processed, summarized, and reported within the time periods specified in the rules of the Securities and Exchange Commission, and (ii) accumulated and communicated to Autodesk management,

including our CEO and CFO, to allow timely decisions regarding required disclosure. We conducted an evaluation, under the supervision and with the participation of our CEO and CFO, of the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this Quarterly Report on Form 10-Q. ***Based upon this evaluation, our CEO and CFO have concluded that our disclosure controls and procedures were effective to meet the objective for which they were designed and operated at the reasonable assurance level***.

Our disclosure controls and procedures include components of our internal control over financial reporting. Our management, including our CEO and CFO, does not expect that our disclosure controls and procedures or our internal control over financial reporting will necessarily prevent all errors and all fraud. A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met. Further, the design of a control system must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within Autodesk have been detected.

(Emphasis added).

18. The statement in ¶ 17 was materially false and misleading at the time it was made because the Company lacked effective internal controls. This issue would eventually lead to the delayed filing of the Company's annual report for its 2024 Fiscal Year (the "2024 Annual Report")

19. On August 29, 2023, Autodesk filed with the SEC its quarterly report on Form 10-Q for the period ended July 31, 2023 (the "2Q24 Report"). Attached to the 2Q24 Report were certifications pursuant to SOX signed by Defendants Anagnost and Clifford attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20. The 2Q24 Report stated the following regarding internal controls:
We maintain "disclosure controls and procedures," as defined in Rule 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Our disclosure controls and procedures are designed to ensure that information required to be disclosed in our Exchange Act reports is (i) recorded, processed, summarized, and reported within the time periods specified in the rules of the Securities and Exchange Commission, and (ii) accumulated and communicated to Autodesk management, including our CEO and CFO, to allow timely decisions regarding required disclosure. We conducted an evaluation, under the supervision and with the participation of our CEO and CFO, of the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this Quarterly Report on Form 10-Q.

*Based upon this evaluation, our CEO and CFO have concluded that our disclosure controls and procedures were effective to meet the objective for which they were designed and operated at the reasonable assurance level.*

Our disclosure controls and procedures include components of our internal control over financial reporting. Our management, including our CEO and CFO, does not expect that our disclosure controls and procedures or our internal control over financial reporting will necessarily prevent all errors and all fraud. A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met. Further, the design of a control system must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within Autodesk have been detected.

(Emphasis added).

21. The statement in ¶ 20 was materially false and misleading at the time it was made because the Company lacked effective internal controls. This issue would eventually lead to the delayed filing of the 2024 Annual Report.

22. On December 4, 2023, Autodesk filed with the SEC its quarterly report on Form 10-Q for the period ended October 31, 2023 (the "3Q24 Report"). Attached to the 3Q24 Report were certifications pursuant to SOX signed by Defendants Anagnost and Clifford attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23. The 3Q24 Report stated the following regarding internal controls:

We maintain "disclosure controls and procedures," as defined in Rule 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Our disclosure controls and procedures are designed to ensure that information required to be disclosed in our Exchange Act reports is (i) recorded, processed, summarized, and reported within the time periods specified in the rules of the Securities and Exchange Commission, and (ii) accumulated and communicated to Autodesk management, including our CEO and CFO, to allow timely decisions regarding required disclosure. We conducted an evaluation, under the supervision and with the participation of our CEO and CFO, of the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this Quarterly Report on Form 10-Q. *Based upon this evaluation, our CEO and CFO have concluded that our disclosure controls and procedures were effective to meet the objective for which they were designed and operated at the reasonable assurance level.*

Our disclosure controls and procedures include components of our internal control over financial reporting. Our management, including our CEO and CFO, does not expect that

5

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

> our disclosure controls and procedures or our internal control over financial reporting will necessarily prevent all errors and all fraud. A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met. Further, the design of a control system must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within Autodesk have been detected.

(Emphasis added).

24.  The statement in ¶ 23 was materially false and misleading at the time it was made because the Company lacked effective internal controls. This issue would eventually lead to the delayed filing of the 2024 Annual Report.

25.  On February 29, 2024, Autodesk issued a press release entitled "AUTODESK, INC. ANNOUNCES FISCAL 2024 FOURTH QUARTER AND FULL-YEAR RESULTS" (the "2024 Results Announcement"). The 2024 Results Announcement stated the following results, in pertinent part:

> Autodesk, Inc. [. . .] today reported financial results for the fourth quarter and full year of fiscal 2024.
>
> Fourth Quarter Fiscal 2024 Financial Highlights
> - Total revenue increased 11 percent to $1.47 billion;
> - GAAP operating margin was 21 percent, flat compared to the prior period;
> - ***Non-GAAP operating margin was 36 percent***, flat compared to the prior period;
> - GAAP diluted EPS was $1.31, Non-GAAP diluted EPS was $2.09;
> - Cash flow from operating activities was $437 million; ***free cash flow was $427 million***.

(Emphasis added).

26.  Upon information and belief, the figures presented in ¶ 25 for Non-GAAP operating margin and free cash flow were materially false and misleading.

27.  The statements contained in ¶¶ 17, 20, 23, and 25 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Autodesk, Inc. lacked adequate internal controls as a result of issues with its free cash flow and non-GAAP operating margin practices;

and (2) as a result, Defendants' statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all times.

## THE TRUTH BEGINS TO EMERGE

28. On April 1, 2024, after the market closed, the Company filed with the SEC a late filing notice on Form 12b-25 (also known as Form NT 10-K). It stated the following:

> Autodesk, Inc. [. . . ] is unable to file its Annual Report on Form 10-K for the year ended January 31, 2024 [. . .] within the prescribed time period, without unreasonable effort or expense. After the Company's earnings release on February 29, 2024, information was brought to the attention of management, which promptly informed the Audit Committee (the "**Committee**") of the Board of Directors of the Company, ***that caused the Committee to commence an internal investigation with the assistance of outside counsel and advisors, regarding the Company's free cash flow and non-GAAP operating margin practices***. The Committee is comprised entirely of outside "independent directors" as defined by the Nasdaq Stock Market listing standards. The investigation is ongoing and all parties are working diligently to complete the investigation. ***The Company has voluntarily contacted the Securities and Exchange Commission [. . .] to advise it that an internal investigation is ongoing, and the Committee intends to provide additional information to the Commission as the investigation proceeds.*** The Company needs further time to assist the Committee in its investigation and to review its practices in this regard.
>
> The Company currently does not believe that any of the matters under investigation affect any previously issued financial statements or the information in the Company's earnings release on February 29, 2024. ***The Company currently expects to file the Form 10-K within the 15-day extension period prescribed by Rule 12b-25 under the Securities Exchange Act of 1934, as amended***.

(Emphasis added).

29. On this news, the price of Autodesk stock fell $10.73 per share, or 4.13%, to close at $248.71 on April 2, 2024.

30. On April 16, 2024, after the market closed, the Company issued a press release entitled "Autodesk provides update on delayed Form 10-K filing." It revealed that the Company would not be able to file its 10-K within the 15-day extension period, as discussed in ¶ 28, stating the following:

> ***The Company will not file its Annual Report on Form 10-K for the year ended January 31, 2024 (the "Form 10-K") within the 15-day extension period contemplated by Rule 12b-25(b) under the Securities Exchange Act of 1934***, as amended, due to the ongoing investigation. ***Accordingly, the Company expects to receive a notice from The Nasdaq Stock Market ("Nasdaq") that it is not in compliance with the timely filing***

*requirement for continued listing under Nasdaq Listing Rule 5250(c)(1).* Such notification letter is not expected to have an immediate effect on the listing or trading of the Company's common stock on the Nasdaq Global Select Market.

*In accordance with Nasdaq's listing rules, the Company will have 60 calendar days after the receipt of a notification letter from Nasdaq to submit a plan of compliance to Nasdaq addressing how the Company intends to regain compliance with Nasdaq's listing rules*, and Nasdaq will have the discretion to grant the Company up to 180 calendar days from the due date of the Form 10-K to regain compliance. The Company intends to take the necessary steps to regain compliance with Nasdaq's listing rules as soon as practicable.

(Emphasis added).

31. On this news, the price of Autodesk stock fell $13.32 per share, or 5.83%, to close at $214.92 on April 17, 2024. The next day, it fell a further $4.29 per share, or 1.99%, to close at $210.63 on April 18, 2024.

32. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

33. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

35. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

40. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

46. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

47. Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above,

11

and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

48. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

49. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

50. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

51. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II

**Violations of Section 20(a) of the Exchange Act**

**Against the Individual Defendants**

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the

conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

54. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

55. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

56. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: 4/24/2024

**THE ROSEN LAW FIRM, P.A.**
/s/ Laurence M. Rosen

Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS